**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | Case No. 18-10098-MSH |
| DONALD C. KUPPERSTEIN | ) | |
| | ) | |
| Debtor | ) | |
| | ) | |
| | ) | |
| IRENE B. SCHALL, | ) | |
| Successor Personal Representative | ) | |
| of the Estate of Fred W. Kuhn, | ) | Adversary Proceeding |
| | ) | No. 18-01100-MSH |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD C. KUPPERSTEIN | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |
| | ) | |
| EXECUTIVE OFFICE OF HEALTH | ) | |
| AND HUMAN SERVICES | ) | |
| of the Commonwealth of Massachusetts | ) | Adversary Proceeding |
| | ) | No. 18-01101-MSH |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DONALD C. KUPPERSTEIN | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**MEMORANDUM OF DECISION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

I.     **Introduction**

The plaintiffs Irene B. Schall, as the personal representative of the estate of Fred W.

Kuhn, and the Executive Office of Health and Human Services of the Commonwealth of

1

Massachusetts ("EOHHS") commenced these adversary proceedings, filing multi-count

complaints against the defendant, Donald C. Kupperstein, who is the debtor in the main case.    In

their complaints, which rely on common factual allegations, each plaintiff seeks to have Mr.

Kupperstein's bankruptcy discharge denied under Bankruptcy Code § 727(a)(4)(A) based upon

Mr. Kupperstein's having "made a false oath or account" "knowingly and fraudulently, in or in

connection with [his bankruptcy] case."[1]    *See* Complaint at 7-10 (count IV), *Schall v.*

*Kupperstein*, Adv. No. 18-01100 (Bankr. D. Mass. July 16, 2018), ECF No. 1 [hereinafter, case

filings cited as "Schall AP"]; Complaint at 25-26 (count V), *Exec. Office of Health & Human*

*Servs. v. Kupperstein*, Adv. No. 18-01101 (Bankr. D. Mass. July 16, 2018), ECF No. 1

[hereinafter, case filings cited as "EOHHS AP"].[2]

Those claims were among the counts that survived Mr. Kupperstein's previous motions

to dismiss under Federal Rule of Civil Procedure 12(b)(6).    The two adversary proceedings were

consolidated for a trial on the § 727(a)(4)(A) counts, and the consolidated matters are now before

me on Mr. Kupperstein's motions for summary judgment and the plaintiffs' joint motion for

summary judgment as to each proceeding.    Mr. Kupperstein has included supporting briefs with

his motions.    He has separately filed an amended statement of undisputed facts.    He has also

filed multiple responses to the plaintiffs' joint motion, including an amended response that is

verified, as well as a supplemental brief providing additional legal authority.    The plaintiffs have

filed a brief in support of their joint motion and a statement of undisputed facts.    They have also

filed a joint response to Mr. Kupperstein's motions and to his amended statement of undisputed

---

[1]  All references to the Bankruptcy Code are to 11 U.S.C. §§ 101-1532.

[2]  The relevant counts in each complaint refer to § 727(a)(4), but it is undisputed that each
plaintiff is seeking a denial of Mr. Kupperstein's discharge under § 727(a)(4)(A) (false oath or
account).

facts.    Mr. Kupperstein did not timely respond to the plaintiffs' statement of undisputed facts.

Thus, for the purposes of considering the plaintiffs' summary judgment motion, their undisputed

facts are deemed to have been admitted by Mr. Kupperstein.[3]    *See* Fed. R. Civ. P. 56(e)(2);

MLBR 7056-1, 9029-3 (adopting D. Mass. L.R. 56.1).    Finally, the plaintiffs and Mr.

Kupperstein have filed a joint pretrial memorandum.

　　　Having considered the parties' filings noted above and the record as a whole, as well as

the arguments of counsel at a hearing on the motions, I now set forth my analysis and

conclusions.[4]

---

[3] Mr. Kupperstein's failure to respond to the plaintiffs' statement of undisputed facts was raised at the hearing on the cross-motions for summary judgment.    Mr. Kupperstein's counsel attributed the failure to an oversight, stating that he had prepared such a response and could file it within a day.    Six days later, Mr. Kupperstein filed a late verified response accompanied by a motion seeking to have it accepted.    Having already taken the summary judgment motions under advisement, I denied Mr. Kupperstein's request.

[4] Mr. Kupperstein filed a substantially similar but not identical motion for summary judgment in each adversary proceeding.    *Compare* Def.'s Mot. Summ. J., Schall AP, ECF No. 90, *with* Def.'s Mot. Summ. J., EOHHS AP, ECF No. 78.    Otherwise, the parties' filings on the consolidated matters are duplicates in each adversary proceeding.    In the Schall AP, the filings include: Joint Pretrial Mem., ECF No. 93; Pls.' Resp. to Def.'s Mot. Summ. J., ECF No. 94; Pls.' Mot. Summ. J., ECF No. 96; Pls.' Mem. Supp. Summ. J., ECF No. 97; Pls.' O'Neill Aff., ECF No. 98; Pls.' Undisp. Facts, ECF No. 104; Def.'s Am. Undisp. Facts, ECF No. 108; Pls.' Resp. to Def.'s Am. Undisp. Facts, ECF No. 116; Def.'s Verified Am. Resp. to Pls.' Mot. Summ. J. [hereinafter, "Def.'s Verified Am. Resp."], ECF No. 117.    In the EOHHS AP, the filings include: Joint Pretrial Mem., ECF No. 81; Pls.' Resp. to Def.'s Mot. Summ. J., ECF No. 82; Pls.' Mot. Summ. J., ECF No. 84; Pls.' Mem. Supp. Summ. J., ECF No. 85; Pls.' O'Neill Aff., ECF No. 86; Pls.' Undisp. Facts, ECF No. 92; Def.'s Am. Undisp. Facts, ECF No. 96; Pls.' Resp. to Def.'s Am. Undisp. Facts, ECF No. 104; Def.'s Verified Am. Resp. to Pls.' Mot. Summ. J. [hereinafter, "Def.'s Verified Am. Resp."], ECF No. 105.    Because the docket numbers differ between the duplicates in each case, they are cited in this memorandum without reference to the adversary proceeding in which they were filed.    Further, certain filings, including the parties' joint pretrial memorandum and Mr. Kupperstein's verified amended response to the plaintiffs' joint summary judgment motion, were filed without pagination.    Thus, the pagination added by this Court's electronic filing system is used in citations to those documents.

## II.    **Background**

The parties have been embroiled in a long-running dispute that came to a head when a

Massachusetts state court invalidated the 2014 transfer of real property that was part of Mr.

Kuhn's probate estate and upon which EOHHS had recorded a Medicaid lien.   The transfer had

been orchestrated by Mr. Kupperstein, who benefited from it.   As part of the state court's ruling,

Mr. Kupperstein was ordered to pay money to the plaintiffs.   A more complete recounting in

graphic detail of the events leading up to the voiding of the real estate transfer, the orders that

Mr. Kupperstein pay the plaintiffs, and Mr. Kupperstein's bankruptcy filing are found in prior

decisions by this and several other state and federal courts.   *E.g.*, *In re Kupperstein*, 943 F.3d

12, 15-18, 25-26 (1st Cir. 2019); Oct. 24, 2019 Mem., EOHHS AP, ECF No. 26.   In the interest

of narrative economy, I offer only those facts that are relevant to my analysis of the

§ 727(a)(4)(A) claims.

On January 11, 2018, Mr. Kupperstein filed a voluntary petition for relief under chapter 7

of the Bankruptcy Code.   With his petition, Mr. Kupperstein filed a statement of financial affairs

("SOFA"), schedules of assets and liabilities, and other required documents.   *See* Pet., Case No.

18-10098, ECF No. 1.[5]   Separately, he filed a statement of his current monthly income.   *See*

CMI Statement, Case No. 18-10098, ECF No. 4.   Signing and dating the petition by hand, Mr.

Kupperstein "declare[d] under penalty of perjury that the information provided [was] true and

correct."   Pet. 8.   Likewise, hand signing and dating a declaration regarding electronic filing,

Mr. Kupperstein "declare[d] under penalty of perjury that all of the information contained in

---

[5] The petition, statement of financial affairs, schedules, and other related documents were filed
together as a single filing (ECF No. 1) but are separately paginated documents.   For ease of
reference, the entire filing is cited as "Pet." and the pagination assigned by this Court's electronic
filing system is provided in citations to it.

[his] Petition, Schedules, Statements and Lists . . ., filed electronically, [was] true and correct."

Pet. 10; *see also* Def.'s Mot. Summ. J. Exs. 71, Kupperstein Dep. 43:15, July 11, 2018

(confirming his signature on and understanding of the declaration).[6]   Mr. Kupperstein's SOFA,

a declaration about his schedules, and the statement of his current monthly income all bear his

electronic signature, declaring under penalty of perjury that the filings were true and correct.

Mr. Kupperstein does not claim to have misunderstood the significance of signing the

bankruptcy forms.   Indeed, he is not unsophisticated in such matters.   Although represented by

counsel in the main case and in these adversary proceedings, Mr. Kupperstein himself is an

attorney admitted to practice in the Commonwealth of Massachusetts in 1985, who "is still active

on an occasional basis."[7]   Joint Pretrial Mem. 5; *see also* Def.'s Mot. Summ. J. Exs. 50-55,

Kupperstein Dep. 22:24-27:16, July 11, 2018 (discussing his law practice).

As detailed below, the plaintiffs have identified numerous alleged falsehoods in Mr.

Kupperstein's petition, statements, and schedules, as well as during a July 2018 examination of

---

[6] Mr. Kupperstein attached seven exhibits to each of his summary judgment motions.   Def.'s
Mot. Summ. J. Exs., Schall AP, ECF No. 90-1; Def.'s Mot. Summ. J. Exs., EOHHS AP, ECF
No.78-1.   The exhibits to each motion are identical and include the full transcript from a July
11, 2018 examination of Mr. Kupperstein under oath, conducted by the plaintiffs under Federal
Rule of Bankruptcy Procedure 2004 before they initiated these adversary proceedings, and the
full transcript from a March 3, 2020 deposition of him also conducted by the plaintiffs.   Each
transcript is separately paginated but also includes continuous pagination that Mr. Kupperstein
added to the exhibit collection.   For ease of reference, citations to each transcript include both
the added and original page numbers.

[7] Initially, Mr. Kupperstein was represented in the main case by David B. Madoff, who signed as
his attorney on Mr. Kupperstein's bankruptcy petition.   About five months later, David G. Baker
entered an appearance as counsel to Mr. Kupperstein and Mr. Madoff was permitted to
withdraw.   Mr. Baker's representation of Mr. Kupperstein has continued in the main case and
expanded into these later-filed adversary proceedings.   In the parties' joint pretrial
memorandum, Mr. Kupperstein describes Mr. Madoff as "a competent, experience[d] bankruptcy
attorney who is also a chapter 7 panel trustee."   Joint Pretrial Mem. 6.   Mr. Kupperstein
acknowledges that Mr. Madoff "made a full and diligent inquiry into the relevant facts and
reported them correctly in the schedules and statements."   *Id.*

Mr. Kupperstein under oath pursuant to Federal Rule of Bankruptcy Procedure 2004.   To the

extent that Mr. Kupperstein has addressed the plaintiffs' allegations, he has generally asserted

that the plaintiffs lack admissible evidence to show the falsity of his statements under oath or his

having made them with knowing and fraudulent intent.   Mr. Kupperstein also maintains that any

false statements were not material.   Apart from these generalized assertions, Mr. Kupperstein

has largely neglected to address key allegations and evidence in detail despite the shifting burden

of proof that applies to him with respect to claims under § 727(a)(4)(A).

### III.      Legal Standards

#### a.      Summary Judgment

Summary judgment must be granted if the moving party shows that no material fact is

genuinely disputed and that, as a matter of law, the moving party is entitled to judgment in its

favor.   Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Bankr.

P. 7056 (applying Rule 56 to adversary proceedings).   To show that no material fact is

genuinely disputed, the moving party must cite materials in the record or show an adverse party's

lack of sufficient admissible evidence to support a claim or defense for which it would bear the

burden of proof at trial.   *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 322-23; *see also*

*Martinez v. Colon*, 54 F.3d 980, 984 (1st Cir. 1995) (noting that "material" facts are those with

potential to change a case's outcome); *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5,

8 (1st Cir. 1990) (noting "genuine" disputes are those in which "evidence, viewed in the light

most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor

of either party" (citation omitted)).

If the moving party meets its burden, the non-moving party cannot avoid summary

judgment unless it establishes that a material fact is genuinely disputed.   *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).  To do so, the non-moving party may also cite materials in the record, or the non-moving party may show that the moving party's cited materials would be inadmissible at trial or that such materials fail to establish the absence of a genuine dispute.  *See* Fed. R. Civ. P. 56(c)(1)-(2); *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60, 66 (1st Cir. 2004) ("The non-moving party must show more than conclusory allegations, improbable inferences or unsupported speculation to establish genuine issues of material fact. Competent evidence is required.").  If the non-moving party would bear the burden of proof at trial on a specific issue, including a defense, "the non-movant . . . must adduce sufficient evidence to permit the trier of fact to resolve that issue in his favor."  *Harrington v. Simmons (In re Simmons)*, 810 F.3d 852, 857, 859 (1st Cir. 2016).

The court must consider each party's cited materials but "may [also] consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  Those materials "and all reasonable inferences therefrom [are considered] in the light most favorable to the non-moving parties," including when considering cross-motions for summary judgment, with the court "view[ing] each motion, separately, through this prism."  *See Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010); *see also Blackie v. Maine*, 75 F.3d 716, 721 (1st Cir. 1996)).  Ultimately, with cross-motions for summary judgment, the court "must determine based on the undisputed facts whether either the plaintiffs or the defendant[] deserve judgment as a matter of law." *Hartford Fire Ins. Co. v. CNA Ins. Co. (Europe)*, 633 F.3d 50, 53 (1st Cir. 2011).

    **b.**       <u>**11 U.S.C. § 727(a)(4)(A)**</u>

Although "the statutory right to a discharge should ordinarily be construed liberally in favor of the debtor," specific provisions are intended "to make certain that those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of

their affairs."  *Boroff v. Tully (In re Tully)*, 818 F.2d 106, 110 (1st Cir. 1987).   They "are

designed to insure that complete, truthful, and reliable information is put forward at the outset of

the proceedings, so that decisions can be made by the parties in interest based on fact rather than

fiction."  *Id.*   As indicated above, Bankruptcy Code § 727(a)(4)(A) is one such provision and

mandates denying a discharge to a debtor who "knowingly and fraudulently, in or in connection

with the case . . . made a false oath or account."   11 U.S.C. § 727(a)(4)(A); *see also Smith v.*

*Grondin (In re Grondin)*, 232 B.R. 274, 277 (B.A.P. 1st Cir. 1999) (concluding that a single false

oath or account can support denial of discharge, per statute's plain language).

The standards and burdens of proof and persuasion that apply to a claim under

§ 727(a)(4)(A) are well settled:

> (1) the plaintiff must show that the debtor knowingly and fraudulently made a false
> oath; and (2) the false statement must relate to a material fact.   *See In re Tully*, 818
> F.2d at 110.   Further, "the burden of proof rests with the [plaintiff] but once it
> reasonably appears that the oath is false, the burden falls upon the [debtor] to come
> forward with evidence that he has not committed the offense as charged."   *Id.*
> (citing *In re Shebel*, 54 B.R. 199, 202 (Bankr. D. Vt. 1985) and quoting *In re*
> *Mascolo*, 505 F.2d 274, 276 (1st Cir. 1974)) (internal quotation marks omitted).

*Lussier v. Sullivan (In re Sullivan)*, 455 B.R. 829, 837 (B.A.P. 1st Cir. 2011) (alterations in original).

A debtor makes oaths in the bankruptcy case through the debtor's petition, schedules, and

statements upon executing those documents with a declaration under penalty of perjury that the

information provided therein is true and correct.   *See Perry v. Warner (In re Warner)*, 247 B.R.

24, 26 (B.A.P. 1st Cir. 2000) (citing 28 U.S.C. § 1746); Fed. R. Bankr. P. 1008.   A debtor may

also make oaths in or in connection with the case through affidavits, verifications, and sworn

testimony given in relation to the proceedings.   By omitting or affirmatively misrepresenting

information in the above contexts, a debtor may be found to have made a false oath.   *See*

*Premier Capital, LLC v. Crawford (In re Crawford)*, 841 F.3d 1, 8 (1st Cir. 2016); *Olympic*

*Coast Inv., Inc. v. Wright (In re Wright)*, 364 B.R. 51, 73 (Bankr. D. Mont. 2007) (citing *Fogal*

*Legware of Switzerland, Inc. v. Wills (In re Wills)*, 243 B.R. 58, 62 (B.A.P. 9th Cir. 1999)).   The

debtor may be said to have made the false oath knowingly and fraudulently if he shows a

reckless disregard for or indifference to the truth.   *Robin Singh Educ. Servs., Inc. v. McCarthy*

*(In re McCarthy)*, 488 B.R. 814, 826 (B.A.P. 1st Cir. 2013); *In re Tully*, 818 F.2d at 112; *see*

*also In re Chavin*, 150 F.3d 726, 728 (7th Cir. 1998) (concluding that "not caring whether some

representation is true or false" satisfies the applicable intent standard).

The debtor's intent may be shown through direct or circumstantial evidence and may be

"inferred from a course of conduct."   *In re McCarthy*, 488 B.R. at 826; *see also In re Grondin*,

232 B.R. at 277 (noting that quantity and quality of false oaths merit consideration and may

strengthen inference); *Neugebauer v. Senese (In re Senese)*, 245 B.R. 565, 575 (Bankr. N.D. Ill.

2000) (noting that circumstantial evidence could include "a pattern of concealment and errors").

Because summary judgment requires drawing all reasonable inferences in the non-moving

party's favor, the court must "use special caution" before granting summary judgment on matters

involving intent.   *Daniels v. Agin*, 736 F.3d 70, 83 (1st Cir. 2013).   "[I]n some cases, summary

judgment on the issue of intent is permissible," including if "the non-movant relies on

conclusory allegations or insupportable inferences" or "fails to create any reasonable basis for

avoiding the conclusion that he acted, at best, with reckless disregard for the truth of the material

information he supplied during his bankruptcy proceedings."   *Id.* at 83-85.

Finally, the debtor's "false oath [is] material if [its] subject matter 'bears a relationship to

the bankrupt's business transactions or estate, or concerns the discovery of assets, business

dealings, or the existence and disposition of his property.'" *In re Tully*, 818 F.2d at 111 (quoting

*Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir. 1984)); *see also Daniels*, 736

F.3d at 82 ("Information omitted from a bankruptcy petition or schedule is material if it is 'pertinent to the discovery of assets, including the history of a bankrupt's financial transactions.'" (quoting *In re Mascolo*, 505 F.2d at 277)); *In re Sullivan*, 455 B.R. at 839 (noting materiality's low threshold).    Materiality is not determined by, for example, an undisclosed asset having little value, being unreachable by creditors, or causing no detriment to creditors.    *In re Crawford*, 841 F.3d at 8-9 & n.5; *Daniels*, 736 F.3d at 82; *In re Mascolo*, 505 F.2d at 277-78.

### c.      **Plaintiffs' Standing**

Although no party has squarely raised it, I briefly address the issue of the plaintiffs' standing.    *See In re Sullivan*, 455 B.R. at 835 (noting that "issue of standing is jurisdictional and can be raised by the parties or by the court at any time").    Creditors are among those who have standing to object to a debtor's discharge.    11 U.S.C. § 727(c)(1).    Without elaboration, Mr. Kupperstein has described each plaintiff as "allegedly a creditor of the debtor," thereby insinuating that the plaintiffs may not be creditors and may thus lack standing.    *See* Def.'s Mot. Summ. J. 2, Schall AP; Def.'s Mot. Summ. J. 2, EOHHS AP.

A "creditor" includes an "entity that has a claim against the debtor" arising when or before a voluntary bankruptcy case is commenced.    *See* 11 U.S.C. §§ 101(10)(A), 301; *see also* 11 U.S.C. § 101(5)(A) (defining "claim" to include a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured").    For the purposes of § 727, status as a "creditor" is not dependent upon the filing of a proof of claim or holding an allowed claim. *See In re Sullivan*, 455 B.R. at 835-36.

On his original schedule E/F, Mr. Kupperstein listed the estate of Fred W. Kuhn and

EOHHS among those holding nonpriority unsecured claims in "[u]nknown" amounts.[8]   Mr. Kupperstein made no changes to these entries when amending schedule E/F a week later and has not amended that schedule further.   By identifying Mr. Kuhn's probate estate and EOHHS as holders of claims on schedule E/F, Mr. Kupperstein identified those entities as creditors and ensured their standing to object to his discharge.

### IV.      Analysis

As noted, the plaintiffs allege numerous falsehoods in Mr. Kupperstein's oral and written statements under oath.   I begin by considering allegations related to Mr. Kupperstein's SOFA, presenting them in the order most conducive to a coherent analysis.

### a.            Statement of Financial Affairs

The SOFA is an official form required to be filed at the inception of a bankruptcy case on which the debtor answers questions on a broad range of topics directly and indirectly related to his financial status and activities.   By electronically signing his SOFA, Mr. Kupperstein declared under penalty of perjury that he had "read the answers" and that they were "true and correct."[9]   Pet. 41.   It is undisputed that this statement is an oath made by Mr. Kupperstein.

The plaintiffs assert that Mr. Kupperstein omitted and affirmatively misrepresented required information about the existence of and income from businesses or self-employment. The alleged omissions and misrepresentations are found in parts 2 and 11 of Mr. Kupperstein's SOFA.

---

[8] Although inconsequential to the standing analysis here, neither claim was designated as contingent, unliquidated, or disputed.  *See In re Sullivan*, 455 B.R. at 835.

[9] As noted, Mr. Kupperstein also hand-signed a declaration regarding electronic filing in which he "declare[d] under penalty of perjury that all of the information contained in [his] Petition, Schedules, Statements and Lists . . ., filed electronically, [was] true and correct."   Pet. 10.

Part 2 of that form contains questions 4 and 5, which required Mr. Kupperstein to provide information about his gross income in the current and prior years.   Question 4 asks: "Did you have any income from employment or from operating a business during this year or the two previous calendar years?"   The form instructs: "Fill in the total amount of income you received from all jobs and all businesses, including part-time activities."   The form then provides space to list income sources and "[g]ross income (before deductions and exclusions)" for each source. Mr. Kupperstein responded "[n]o" to question 4.   Pet. 35.   Thus, he provided no details about employment or business income in 2018 or 2016 and 2017 (the filing year and the two prior calendar years).

Question 5 asks: "Did you receive any other income during this year or the two previous calendar years?"   The form instructs: "[i]nclude income regardless of whether that income is taxable," and "[l]ist each source and the gross income from each source separately."   Like question 4, the form provides space to list income sources and "[g]ross income (before deductions and exclusions)" for each source.   Mr. Kupperstein responded "[y]es" to question 5 and disclosed income as follows: For 2018, he listed income from social security and retirement; for 2017, he listed income from social security, retirement, and IRA distributions; and for 2016, he listed income from retirement and IRA distributions.   *See* Pet. 36.

Part 11 of the SOFA contains questions 27 and 28, which required Mr. Kupperstein to provide information about his "Business or Connections to Any Business."   Question 27 asks: "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?"   It then provides a choice of five connections, including "sole proprietor or self-employed in a trade, profession, or other activity, either full-time or part-time."   Mr. Kupperstein responded: "No. None of the above applies."   Pet. 41.   Thus, he did

not provide details about any businesses or connections to businesses, as would have been

required had he responded in the affirmative.   Question 28 asks: "Within 2 years before you

filed for bankruptcy, did you give a financial statement to anyone about your business?"   The

form instructs: "Include all financial institutions, creditors, or other parties."   Mr. Kupperstein

responded "[n]o" and thus provided no details.   *See* Pet. 41.

### i.  Mr. Kupperstein's Law Practice

Relying upon Mr. Kupperstein's 2016 and 2017 individual federal income tax returns, the

plaintiffs contend that Mr. Kupperstein had gross income from operating his law practice as a

sole proprietor during the two calendar years preceding Mr. Kupperstein's January 2018

bankruptcy filing.   This information was not disclosed on Mr. Kupperstein's SOFA.   The

plaintiffs assert that Mr. Kupperstein's failure to disclose the information constitutes a false oath

that he knowingly and fraudulently made in connection with his bankruptcy case.

Each tax return was completed using the Internal Revenue Service's form 1040.   Each is

designated as being filed jointly with Mr. Kupperstein's spouse and is accompanied by

associated schedules A, B, and C.   The 2016 return is also accompanied by form 4797, which is

discussed separately below.   Mr. Kupperstein prepared the returns himself.[10]

---

[10] The 2017 tax return is unsigned and undated, and the 2016 tax return is signed and dated only
by Mr. Kupperstein.   *See* Pls.' Mem. Supp. Summ. J. Exs. 3-4.   The parties have indicated that
the tax returns were provided by Mr. Kupperstein, and the tax returns were discussed during Mr.
Kupperstein's July 2018 Rule 2004 examination.   Mr. Kupperstein does not dispute the
authenticity or admissibility of the tax returns relied upon by the plaintiffs.   *See* Def.'s Verified
Am. Resp.; Joint Pretrial Mem. 3, 4-5.   Mr. Kupperstein's counsel confirmed his lack of
objection during the hearing on the parties' cross-motions for summary judgment.   Given that
they are undisputed, I assume that the tax returns filed as exhibits here accurately reflect what
Mr. Kupperstein filed with the IRS under penalty of perjury and that the missing signatures and
dates may be due to the returns having been filed electronically.

On line 12 of each form 1040, Mr. Kupperstein listed a business loss, which he derived from completing the attached schedule C—a form titled "Profit or Loss From Business (Sole Proprietorship)."   On the 2017 schedule C, Mr. Kupperstein named himself as the "proprietor" and described his "principal business or profession" as "legal services."   Pls.' Mem. Supp. Summ. J. Ex. 3, at 5 (capitalization altered).   On the 2016 schedule C, Mr. Kupperstein similarly named himself as the proprietor but included no description of the business or profession.[11]   *See* Pls.' Mem. Supp. Summ. J. Ex. 4, at 5.   On each schedule C, Mr. Kupperstein declared about $13,000 in gross income and then listed expenses, including vehicle, office, and itemized "other" expenses, resulting in a claimed net loss for each year.

It is undisputed that Mr. Kupperstein did not disclose the source or amount of his 2016 and 2017 gross income from his law practice as required in part 2 of his SOFA.   More pointedly, by responding "[n]o" to question 4, Mr. Kupperstein affirmatively and falsely represented that he had no gross income from employment or operating a business in the two calendar years that preceded his bankruptcy filing.   It is also undisputed that Mr. Kupperstein did not disclose his law practice sole proprietorship (or self-employment) or disclose any connection to it as required by question 27 in part 11 of his SOFA, but rather affirmatively misrepresented that he had no business or connections to business in the four years before he filed for bankruptcy.   Such omissions and affirmative misrepresentations are false oaths.   *See In re Crawford*, 841 F.3d at 8.

Mr. Kupperstein has suggested that to the extent his oaths were false they were not material.   In his verified answer to Ms. Schall's complaint, Mr. Kupperstein does not deny the

---

[11] Certain itemized "other" expenses declared on the form suggest a law practice, including fees for transcripts and court filings.   *See* Pls.' Mem. Supp. Summ. J. Ex. 4, at 6.   On the tax return's signature page, Mr. Kupperstein appears to have listed his occupation as "lawyer."   *See id.* at 2.

relevant allegations but rather states that his SOFA "speaks for itself," adding that "he is mostly

retired and his income from practicing law was *de minimus* [sic]."   *See* Def.'s Verified Answer

¶ 37, Schall AP, ECF No. 32.   But as Mr. Kupperstein himself separately acknowledged in

denying that he made a false oath by scheduling real property that he did not own:

> It seems more prudent and in the interest of full and complete disclosure to
> acknowledge that the interest is out there, so to speak, and let the panel trustee
> decide whether to [take action]. . . . "[V]aluation is not really the point.   Matters
> are material if pertinent to the discovery of assets, including the history of a
> bankrupt's financial transactions." . . . . [Disclosures must] enable the trustee to
> determine whether to investigate further[.] . . . ["A] false oath is material if its
> subject matter bears a relationship to the bankrupt's business transactions or estate,
> or concerns the discovery of assets, business dealings, or the existence and
> disposition of his property.["] . . . . "[R]egardless of whether a creditor may reach
> an asset, the debtor must still disclose that asset's existence."

Def.'s Mot. Summ. J. 6-7, EOHHS AP (formatting altered) (quoting *In re Tully*, 818 F.2d at 111

n.4; *In re Crawford*, 841 F.3d at 8-9).   Because the subject matter of these false oaths—the

existence of and gross income from a business—indisputably relates to Mr. Kupperstein's

business transactions and concerns the discovery of his business dealings, the false oaths are

material.

I must also consider whether the undisputed facts and evidence establish that Mr.

Kupperstein's false oaths were knowingly and fraudulently made.   This can be established if

Mr. Kupperstein showed reckless disregard for or indifference to the truth.   Given that Mr.

Kupperstein prepared his own 2016 and 2017 tax returns in which he claimed gross income as

the sole proprietor of a business, he was indisputably aware of that information.   Nevertheless,

despite declaring under penalty of perjury that he had "read the answers" in his SOFA and that

they were "true and correct," the income information was not included as required.

Further, on December 22, 2017 (about three weeks before filing his bankruptcy petition),

Mr. Kupperstein submitted a financial statement to a state court.   *See* Pls.' Mem. Supp. Summ.

J. Ex. 1; Def.'s Mot. Summ. J. Exs. 154-56, Kupperstein Dep. 11:19-13:17, Mar. 3, 2020; Def.'s

Verified Answer ¶ 39, Schall AP; Def.'s Verified Answer ¶¶ 29-30, 110, EOHHS AP, ECF No.

30.   In that financial statement, he certified under penalty of perjury that, among other income,

he was receiving $250 per week in gross salary.   At the top of the financial statement, he listed

his occupation as "[a]ttorney (semi-retired)."   *See* Pls.' Mem. Supp. Summ. J. Ex. 1, at 1; *see*

*also* Def.'s Mot. Summ. J. Exs. 154-56, Kupperstein Dep. 11:19-13:17, Mar. 3, 2020.[12]   This

amount is consistent with the roughly $13,000 in annual gross income from Mr. Kupperstein's

law practice that he reported on his 2017 tax return.   The state court financial statement

separately shows Mr. Kupperstein's awareness of his law practice income a mere three weeks

---

[12] The plaintiffs each attached a copy of the financial statement to their complaints, and Mr. Kupperstein did not deny that he had filed the financial statement in state court as alleged.   *See* Compl. ¶ 39 & Ex. E., Schall AP; Compl. ¶¶ 29-30, 110 & Ex. K, EOHHS AP; Def.'s Verified Answer ¶ 39, Schall AP; Def.'s Verified Answer ¶¶ 29-30, 110.   During his March 3, 2020 deposition, Mr. Kupperstein acknowledged that he had submitted a financial statement to the state probate court.   Kupperstein Dep. 11:19-11:21.   A document was shown to him and he acknowledged his signature and the "12-22-2017" date on the document's last page. Kupperstein Dep. 11:22-12:7.   The document was marked for identification and is identified in the transcript's exhibit list as "Financial Statement."   Mr. Kupperstein then read portions of that document into the record, including "Base pay from salary" and the amount "$250." Kupperstein Dep. 13:8-13:12.   In the parties' joint pretrial memorandum, filed before the plaintiffs moved for summary judgment, Mr. Kupperstein raised no objection and therefore waived any objection to the plaintiffs' using the financial statement as a trial exhibit.   Joint Pretrial Mem. 3, 4-5.   Mr. Kupperstein has since asserted that the financial statement is inadmissible, claiming it is not a public record and is not authenticated.   Def.'s Verified Am. Resp. 5 & n.2.   At the summary judgment hearing, Mr. Kupperstein's counsel was asked whether Mr. Kupperstein's deposition testimony could be used to prove certain content in the financial statement.   *See* Fed. R. Evid. 1007.   Counsel responded that he "would have to think about that" and suggested, without support, that testimony about an inadmissible document (his conclusion) would itself be inadmissible.   He further stated that he would need to research and consider the matter but never followed up, even though he later filed additional legal authority on another issue.   Thus, even if the financial statement were to be excluded as inadmissible, Mr. Kupperstein has not established that, and I am unaware of any basis upon which, his relevant deposition testimony, which he attached to his motions for summary judgment, should be excluded.   *See* Fed. R. Civ. P. 56(c)(2).   At a minimum, Mr. Kupperstein's deposition shows that he does not dispute having signed a document in December 2017, reporting a $250 per week salary.

before he filed his bankruptcy petition.   Yet, as noted, the information was not included on his

SOFA.   Further, it is undisputed that Mr. Kupperstein did not disclose the state court financial

statement in response to question 28 on his SOFA, despite the financial statement's relating, at

least in part, to his business.

   In addition to omitting any mention of his law practice in his SOFA, Mr. Kupperstein

failed to disclose this pertinent information in other papers filed by him in this case under the

pains and penalties of perjury.   For example, question 12 on his bankruptcy petition asks: "Are

you a sole proprietor of any full- or part-time business?"   Mr. Kupperstein responded "[n]o."[13]

Pet. 4.   On schedule I, which requires information about a debtor's and non-filing spouse's

employment and monthly income from all sources, Mr. Kupperstein noted himself as

"[e]mployed" but did not provide any of the required details including occupation, employer's

name, or length of employment, although he provided such details for his non-filing spouse.   He

listed no income from employment or from operating a business.   He also did not attach a

statement of gross receipts, expenses, and net income that is required of debtors who have

---

[13] In addition to the seeming discrepancy between that response and Mr. Kupperstein's above-discussed tax returns and state court financial statement, the response appears to be inconsistent with Mr. Kupperstein's response during his July 2018 Rule 2004 examination in which he responded "[y]es" to the question: "Do you practice law as a sole proprietor?" and confirmed that his law practice is not incorporated.   *See* Def.'s Mot. Summ. J. Exs. 51, Kupperstein Dep. 23:19-22.   Mr. Kupperstein has offered little to explain the apparent discrepancy.   He has asserted, without relevant support, that "sole proprietor" means "an individual that uses a business name."   *See* Def.'s Verified Am. Resp. 5.   He then contends that "[t]here is no evidence that Mr. Kupperstein was doing business under a name other than his own," thereby suggesting that he cannot have been a sole proprietor.   *See id.*   The petition itself explains that "[a] sole proprietorship is a business you operate as an individual, and is not a separate legal entity such as a corporation, partnership, or LLC."   Pet. 4.   This description matches so readily with Mr. Kupperstein's situation that reaching any other conclusion seems unreasonable. Perhaps, on January 11, 2018, the day he filed his petition, Mr. Kupperstein had decided not to be a sole proprietor anymore and later changed his mind, making this an issue of verb tense.

income from rental property or "from operating a business, profession, or farm."[14]   Finally,

notwithstanding the salary reported on his December 2017 financial statement filed with the state

court, Mr. Kupperstein reported on his January 2018 statement of current monthly income,

another official form filed under oath in his bankruptcy case, that he had received no gross

income from employment or gross receipts from operating a business in the prior six months.

Taking Mr. Kupperstein's law practice-related false oaths on his SOFA and adding the

undisputed and largely unexplained omissions of his law practice from other bankruptcy papers

filed under oath, creates a summary judgment record which overwhelmingly supports the

plaintiffs' allegations that Mr. Kupperstein exhibited a reckless disregard for or indifference to

the truth of material financial information of which he was fully aware.   Even viewing the

evidence in the light most favorable to Mr. Kupperstein, as I must, the unavoidable conclusion is

that Mr. Kupperstein knew of his law business, his income from it, his legal obligation to

---

[14] Mr. Kupperstein has suggested that the information on schedule I was intended to reflect his
income as of the bankruptcy petition date and on that specific day the information was correct.
*See* Def.'s Verified Am. Resp. 5; Def.'s Verified Answer ¶ 36, Schall AP; Def.'s Verified
Answer ¶ 111, EOHHS AP.   Yet, Mr. Kupperstein's testimony during his March 2020
deposition suggests otherwise.   Mr. Kupperstein was asked whether he had experienced any
significant change in his financial situation between December 22, 2017, when he reported a
$250 per week salary on a state court financial statement, and his January 11, 2018 bankruptcy
petition filing, when he reported no employment or business income on schedule I.   Mr.
Kupperstein identified as the only such change "Judicial Orders" as to which he reported no
associated out-of-pocket expenses.   *See* Def.'s Mot. Summ. J. Exs. 155-56, Kupperstein Dep.
12:8-13:12.   Schedule I instructs a debtor to "[e]stimate monthly income as of the date you file
this form." Pet. 30.   Within less than one month before filing the form, Mr. Kupperstein
reported having weekly income, which would thus seemingly fall within an estimate of his
monthly income, making it an amount higher than the $0.00 that he reported.   Mr. Kupperstein
has offered nothing to support his suggestion that having no income on the petition date itself
excuses a debtor from including in the monthly income estimate such income that the debtor
received, for example, three weeks before—particularly when the debtor reports on schedule I
that he is employed.

disclose such information, and the consequences of failing to do so.   By failing to disclose this information, Mr. Kupperstein willfully and intentionally swore to what was false.[15]

Mr. Kupperstein has offered nothing to rebut the plaintiffs' claims, *see Daniels*, 736 F.3d at 83-85, apart from his blanket statement "that any omissions or errors [in his schedules and statements] were not knowing and intentional," *see* Joint Pretrial Mem. 6.   Such unsupported general denials carry no weight, especially in light of the inescapable inferences to the contrary presented by the summary judgment record.[16]   *See Daniels*, 736 F.3d at 83-85; *In re Sullivan*, 455 B.R. at 837; *In re Schifano*, 378 F.3d at 66.

A debtor's single false oath made knowingly and fraudulently in connection with the case is sufficient to result in the denial of a debtor's bankruptcy discharge.   *See In re Grondin*, 232 B.R. at 277.   Drawing all reasonable inferences in Mr. Kupperstein's favor, the undisputed material facts here establish that Mr. Kupperstein knowingly and fraudulently made multiple false oaths on his SOFA.   As such, the plaintiffs are entitled to summary judgment on their § 727(a)(4)(A) counts on this ground alone.   Nevertheless, there are other grounds as well.

---

[15] This conclusion holds even if I were not to consider the December 2017 financial statement.

[16] In addition to his income tax returns and state court financial statement reflecting his knowledge of the income, Mr. Kupperstein has admitted to separately documenting the income for record-keeping purposes.   *See* Def.'s Mot. Summ. J. Exs. 55, Kupperstein Dep. 27:14-16, July 11, 2018 ("For a given tax year, I'll keep those[, meaning a list of fees generated from client work,] on a scrap of paper so that I can do my taxes at the end of the year.").   Further, despite the discrepancies and deficiencies identified above, which were substantially brought to his attention by July 2018, he has never amended his statement of financial affairs, petition, schedule I, or statement of current monthly income.   Other than to suggest that the law practice-related false oaths on his statement of financial affairs were immaterial, Mr. Kupperstein has essentially declined to address these matters.

ii.   Other Undisclosed Income

The plaintiffs allege that Mr. Kupperstein failed to disclose several other sources of income that he received within the two calendar years before his 2018 bankruptcy filing.   I will focus on the plaintiffs' allegation that Mr. Kupperstein failed to disclose a $17,500 payment that he received in 2016.

As discussed above, part 2 of the SOFA requires a debtor to disclose all gross income that the debtor received in the year of his bankruptcy filing and in the prior two calendar years. For 2016, Mr. Kupperstein disclosed in his SOFA income totaling $4,853 from retirement and IRA distributions only.   As noted, Mr. Kupperstein's 2016 individual federal income tax return is accompanied by IRS form 4797, which is titled "Sales of Business Property."   Pls.' Mem. Supp. Summ. J. Ex. 4, at 7-8.   On line 12 of that form, Mr. Kupperstein reported a zero gain from what he described in line 10 as a "wash transaction."   *Id.* at 7 (capitalization altered).   In an addendum, titled "Phantom Income," Mr. Kupperstein explained that, in 2016, he received $17,500 from a title insurer to settle a lawsuit he brought on his own behalf that arose from a mortgage he had purchased in 2006 for the same amount.   *Id.* at 9.   He explained that he was never paid on the mortgage but had not claimed the loss on his tax returns, leading to his conclusion that the $17,500 received in 2016 from the title insurer "d[id] not constitute income to [him]."   *Id.*

Whether or not the $17,500 received by Mr. Kupperstein in 2016 was taxable income, it was income required to be disclosed on his SOFA.   *See* Pet. 36.   It is undisputed that Mr. Kupperstein did not disclose this income.   Such an omission is a false oath.   *See In re Crawford*, 841 F.3d at 8.   Further, this false oath is material.   Its subject matter relates to Mr. Kupperstein's financial transactions that may have occurred within, for example, look-back

20

periods that apply to fraudulent transfers.  *See In re Mascolo*, 505 F.2d at 277-78; 11 U.S.C.

§ 547.   Finally, given that Mr. Kupperstein prepared his tax returns himself, it is reasonable to

conclude that he was aware of this income (amounting to more than three times the total gross

income that he disclosed on his SOFA for that year) and yet failed to disclose it.[17]   These

undisputed facts establish at a minimum Mr. Kupperstein's reckless indifference to the truth.

In his verified amended response, addressing this and other related false oath allegations

in the plaintiffs' summary judgment motion, Mr. Kupperstein accused the plaintiffs of "fail[ing]

to explain where or why those events [in 2016] must be disclosed in a statement filed in a 2019

bankruptcy case."  Def.'s Verified Am. Resp. 8.   Unfortunately for Mr. Kupperstein, this is a

2018 bankruptcy case, and thus, 2016 is within the relevant period for the disclosures required in

part 2 of Mr. Kupperstein's SOFA.

Mr. Kupperstein has offered nothing to rebut the undisputed material facts showing that

he knowingly and fraudulently made this separate false oath by omitting the $17,500 in gross

income from his SOFA.   As such, upon this separate basis, the plaintiffs are entitled to summary

judgment on their § 727(a)(4)(A) counts.

**b.**         **Schedule A/B: Property**

The plaintiffs allege that Mr. Kupperstein failed to disclose several types of assets,

including real property, personal and household items, financial assets, and business-related

property, as required on his schedule A/B.   They also allege that he improperly listed real

---

[17] During his July 2018 Rule 2004 examination, Mr. Kupperstein admitted that he also had gross income from social security benefits in 2016 that would have been approximately equal to the amount he received in 2017 ($18,744.00).   Def.'s Mot. Summ. J. Exs. 80-81, Kupperstein Dep. 52:14-53:13; Pet. 36.   Mr. Kupperstein did not disclose any 2016 gross income from social security benefits on his SOFA, *see* Pet. 36, and despite his July 2018 admission, has never sought to amend his SOFA.

property in which he had no legal or equitable interest.   Given the conclusions already reached

above, it serves no useful purpose to scrutinize each and every omission and inaccuracy alleged

by the plaintiffs.   In the interest of brevity, I will focus on the plaintiffs' allegation that Mr.

Kupperstein failed to disclose two related assets: a mortgage deed and an assignment of leases

and rents.

The undisputed facts are as follows.   In 2016, Thomas Sheedy, as trustee of the Liberty

Trust, granted to Mr. Kupperstein a $250,000 mortgage on property in the Dorchester

neighborhood of Boston, Massachusetts.   Def.'s Mot. Summ. J. Exs. 113-14, Kupperstein Dep.

85:11-86:22, July 11, 2018; Pls.' Mem. Supp. Summ. J. Ex. 8.   Mr. Sheedy as trustee also

separately assigned to Mr. Kupperstein the property's leases and rents.   Kupperstein Dep. 85:14-

15; Pls.' Mem. Supp. Summ. J. Ex. 9.[18]   Both the mortgage and assignment are dated September

27, 2016, and each was recorded in the registry of deeds on October 3, 2016.   The instruments

cross-reference each other, and both refer to a $250,000.00 loan made by Mr. Kupperstein to Mr.

Sheedy, as trustee.   Mr. Kupperstein does not dispute that no discharge of the mortgage or

assignment of leases and rents has ever been recorded.   Kupperstein Dep. 86:14-16 ("I know

that I didn't record a discharge, but I don't know if I provided Mr. Sheedy with a discharge.").

Mr. Kupperstein did not disclose the mortgage or assignment of leases and rents as assets on his

original schedule A/B filed in January 2018 or on an amended schedule A/B filed in April 2020.

Both schedules were filed under oath.

---

[18] Mr. Kupperstein has objected, without elaboration, that the mortgage and assignment of leases
and rents are not relevant.   These instruments relate to a seemingly substantial business
transaction that involved an apparent asset of Mr. Kupperstein's and a possible source of income
beginning in 2016, which was within the two calendar years prior to Mr. Kupperstein's
bankruptcy—i.e., the relevant timeframe for disclosing income on the SOFA.   Thus, it is
difficult to see how the mortgage and assignment would not be relevant.

Mr. Kupperstein suggests that his nondisclosure was proper and intentional and, in any event, immaterial. *See* Def.'s Verified Am. Resp. 7.[19]   He asserts that the loan was paid in full in December 2016, so that even though a mortgage discharge was never recorded, the mortgage had no value once the underlying debt had been paid.   He does not address the assignment of leases and rents, but presumably his argument would be the same.   Mr. Kupperstein's supporting evidence raises more questions than it answers and does not permit the reasonable inference that the undisclosed mortgage and assignment were valueless when Mr. Kupperstein filed bankruptcy in January 2018.   In his verified response to the plaintiffs' motion for summary judgment, Mr. Kupperstein asserts that his "loan to Liberty Trust [was] for renovation of the property," but "[f]or various reasons, that project did not go forward, and Liberty Trust paid off the loan on or about December 27, 2016."   Def.'s Verified Am. Resp. 7.   Mr. Kupperstein then references a September 27, 2016 promissory note attached as an exhibit to his verified response. In the note, "for value received," Mr. Sheedy as trustee agrees to pay Mr. Kupperstein $250,000.00 plus six percent annual interest "in a single payment on or before December 31, 2017."   Def.'s Verified Am. Resp. Ex. 1, at 1 (capitalization altered).   A partially legible, three-line handwritten notation below Mr. Sheedy's signature appears to state: "Paid in [f]ull,"

---

[19] As he has generally done throughout his filings in this matter, Mr. Kupperstein cites a case that purportedly supports his argument but provides no pinpoint citation.   Here, he cites *Razzaboni v. Schifano (In re Schifano)*, 378 F.3d 60 (1st Cir. 2004).   Although § 727(a)(4)(A) is among the issues discussed, that case offers no apparent support for Mr. Kupperstein's argument that nondisclosure of an allegedly unenforceable recorded mortgage granted to the debtor is immaterial.   In *Schifano*, the debtor failed to disclose his liability on a mortgage on the property where he resided but in which he had no ownership interest.   When the nondisclosure was brought to his attention, he "immediately acknowledged his oversight and disclosed the liability."   *In re Schifano*, 378 F.3d at 68.   The court concluded that "because the evidence clearly shows that the title to the property rests with the Debtor's mother, despite the Debtor's mortgage liability, we agree with the bankruptcy court that these omissions could not justify denial of the discharge of the debt due to false oaths."   *Id.*   The circumstances in *Schifano* are not even arguably analogous to Mr. Kupperstein's.

"December 27, 2016," "see attached schedule."   *See id.* at 2; *see also* Def.'s Verified Am. Resp.

7.   The author of the notation is not identified.

Although the typed text of the two-page promissory note contains no reference to the

attached one-page schedule, the pages are sequentially numbered ("1," "2," "3").   The schedule

does not show a $250,000.00 payment.   Rather, it begins by stating: "Kupperstein paid

$25,000.00 in cash and credits to Liberty Trust on September 27, 2016."   Def.'s Verified Am.

Resp. Ex. 1, at 3.   Below that: "Liberty Trust has made payments and established credits in the

amount of $25,000.00 as follows."   *Id.*   Listed are seven payments of varying amounts, totaling

$25,000.00.   Five payments, totaling $23,000.00, are dated in 2015, which is before the

promissory note, mortgage and assignment of leases were even executed.   One payment of

$1,625.00 is dated December 27, 2016.[20]   One payment of $375.00 is undated and labeled

"[i]nterest," calculated as 1.5 percent of $25,000.00.[21]   The schedule then states: "Kupperstein is

released from his obligation to provide additional funding to Liberty Trust in connection with

this Promissory Note and Mortgage and the Assignment of Leases and Rents of even date."   *Id.*

The schedule is signed only by Mr. Sheedy, as trustee.

As an initial matter, given that neither the note, mortgage, nor assignment made any

reference to Mr. Kupperstein having an associated "obligation to provide additional funding," his

being released from such an obligation appears to be gratuitous.   Also, none of the documents is

consistent with a loan for anything less than $250,000.00.   The assignment, for example, makes

the loan amount clear:

---

[20]  More income Mr. Kupperstein failed to disclose in his SOFA.

[21]  Despite this entry, because the payments total the same amount that was purportedly loaned,
the math shows that no actual interest could have been paid.

24

> Lender [Donald C. Kupperstein] has made a loan to Borrower [Thomas E. Sheedy,
> Trustee of Liberty Trust,] in the principal sum of Two Hundred Fifty Thousand
> Dollars ($250,000.00) and no cents ("Loan") evidenced by that certain Agreement
> regarding 10 Carmen Street, Dorchester, Massachusetts ("Note") dated as of the
> date of this Assignment and secured by that certain Mortgage Deed ("Instrument")
> dated as of the date of this Assignment[.]

Pls.' Mem. Supp. Summ. J. Ex. 9, at 1.

During his July 2018 Rule 2004 examination, Mr. Kupperstein suggested for the first

time that the loan had been for less than $250,000.   He stated then that he had "intended to lend

money" but "didn't have any more money" and that "maybe two or three months later, whatever

it was that [he] had laid out, was paid off and that was the end of that."   Def.'s Mot. Summ. J.

Exs. 113, Kupperstein Dep. 85:15-21.   He estimated that he had loaned more than $10,000,

possibly $11,000 or $12,000, but was "guessing."   Def.'s Mot. Summ. J. Exs. 114, Kupperstein

Dep. 86:2-11.   Mr. Kupperstein first presented the promissory note and accompanying

explanation nearly two years later, on the day before the hearing on the parties' cross-motions for

summary judgment.   He amended his prior response to the plaintiffs' motion specifically to

include this additional information and to add a verification under oath.[22]   See Def.'s Verified

Am. Resp. 1 n.1, 7 n.5.   At the hearing, the plaintiffs' counsel noted numerous issues and

---

[22] Mr. Kupperstein's verification "affirms under pains and penalties of perjury . . . that the
factual statements made [in the amended response] are true and correct to the best of his
recollection, knowledge, information and belief, and that the copy of the [attached promissory
note] is a true and accurate copy of the original."   Def.'s Verified Am. Resp. 9.   He explains
that he amended his response to correct "a transposition error in the chronology," although he
maintains that the issue being raised by the plaintiffs "is irrelevant."   Id. at 1 n.1, 7 n.5.   Mr.
Kupperstein's prior response presented a convoluted story about a possible dispute between other
alleged mortgage holders but suggested that, in any event, an August 2016 foreclosure on the
property had "discharged" Mr. Kupperstein's lien.   To support the foreclosure assertion, he
attached a 2019 recorded "Affidavit to Clarify Title" by Thomas Sheedy.   The error here is
obvious, given that Mr. Kupperstein did not record his mortgage until October 2016 and, thus,
could not have had his lien discharged by an August 2016 foreclosure.   In his amended
response, Mr. Kupperstein again mentions the Sheedy affidavit but abandons the foreclosure-
discharge argument.   Instead, he mentions and attaches the promissory note for the first time.

inconsistencies with Mr. Kupperstein's new submission, and Mr. Kupperstein offered no further explanation.

Overall, Mr. Kupperstein's explanation and evidence defy logic and reason.   It is inconceivable that a borrower would 1) make payments totaling $23,000.00 to a prospective lender before receiving the loan; 2) then, upon receiving it for a net gain of only $2,000.00, execute a promissory note, mortgage, and assignment of leases and rents reflecting that the amount received was $250,000, an amount 125 times more than the net gain; and 3) finally, sign a second document essentially stating that the $2,000.00 had been returned to the lender and suggesting that nothing further was owed without receiving recordable discharges of the security instruments.

Mr. Kupperstein's explanation and evidence simply do not permit any reasonable inference in his favor on this issue.   As indicated above, Mr. Kupperstein does not dispute that he knowingly omitted the mortgage and assignment of rents from his schedule A/B, and his belated and illogical justifications only served to enhance the appearance of fraud.   The mortgage and assignment were outstanding as a matter of public record when Mr. Kupperstein filed his bankruptcy petition.   Thus, even if Mr. Kupperstein believed that the loan had been paid, the mortgage and assignment of leases and rents should have been disclosed.   Mr. Kupperstein's failure to disclose them constitutes false oaths.   And because the omitted assets would have provided the trustee and creditors insight into Mr. Kupperstein's financial transactions and given them the opportunity to investigate his dealings with Mr. Sheedy and the Liberty Trust, the omissions were material.   *See Daniels*, 736 F.3d at 82; *In re Mascolo*, 505 F.2d at 277-78.   Mr. Kupperstein has offered nothing to "create any reasonable basis for avoiding the conclusion that he acted, at best, with reckless disregard for the truth" when making

26

false oaths by omitting these assets from his schedule A/B. *See Daniels*, 736 F.3d at 85.   As such, upon this separate basis, the plaintiffs are entitled to summary judgment on their § 727(a)(4)(A) counts.

**V.**        **Conclusion**

I do not take lightly the concern that a penalty as drastic as the denial of a debtor's discharge imposed by summary judgment deprives the debtor of the opportunity to face his accusers and tell his story at a trial.   That concern is uppermost when I consider discharge objections, and it is why I will pre-empt a trial only in the most flagrant cases.   In those cases, the undisputed facts, all reasonable inferences therefrom, and the record are so clear and the misconduct so blatant that judgment without a trial is appropriate.   This is such a case.

The plaintiffs are entitled to summary judgment on their § 727(a)(4)(A) counts.   Their joint summary judgment motion will be granted, and, in turn, Mr. Kupperstein will be denied a discharge.   Mr. Kupperstein's summary judgment motions hinged upon his assertions that the plaintiffs lacked sufficient admissible evidence to support § 727(a)(4)(A) claims upon which they would bear the burden of proof at trial.   Given the conclusions above that the plaintiffs have supported those claims such that they are entitled to summary judgment on multiple bases, Mr. Kupperstein's motions must be denied.   Separate orders consistent with this memorandum shall enter.

Dated: January 21, 2021                                    By the Court,

                                                              Melvin S. Hoffman
                                                              U.S. Bankruptcy Judge